UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LENNAR HOMES, LLC, a Florida limited
liability company and U.S. HOME
CORPORATION, a Delaware corporation,

    Plaintiffs,

v.

Case No. 6:10-cv-1766-orl-18GJK

UNITED STATES OF AMERICA,

    Defendant.

_____/

## COMPLAINT

Plaintiffs, Lennar Homes, LLC, a Florida limited liability company ("Lennar Homes") and U.S. Home Corporation, a Delaware corporation ("U.S. Home") (collectively, "Lennar"), sue Defendant, the United States of America ("United States"), and allege as follows:

### NATURE OF ACTION

1.  This is a civil action for damages against the United States for negligence as a result of the failure of the United States Army ("U.S. Army"), including the United States Army Corps of Engineers ("USACE" or "Corps"), to (a) timely and properly locate, remove, disarm and discard ("dedud") munitions and explosives of concern ("MEC")[1] from a former

---

[1] MEC includes: (1) unexploded ordnance, as defined in 10 U.S.C. § 101(e)(5); (2) discarded military munitions, as defined in 10 U.S.C. 2710(e)(2); and (3) munitions constituents, as defined in 10 U.S.C. § 2710(e)(3), present in high enough concentrations to pose an explosive hazard.

1

WWII bombing range, known as the Pinecastle Jeep Range ("Range"), located in Orange County, Florida; and (b) warn Lennar and others of the attendant dangers.

2. Over fifty years after military activities at the Range ceased, Lennar, in 2001, began purchasing land located on or in close proximity to the Range, and subsequently built hundreds of single family homes in three residential communities without knowledge (a) of the existence of the Range; or (b) that the U.S. Army and USACE left behind potentially explosive and deadly MEC in the area.

3. In fact, Lennar had no knowledge of the dangers to its communities until it received and evaluated information publicly disseminated by the USACE in late July 2007, after unexploded ordnance was found at Odyssey Middle School.

4. Despite Lennar's request, USACE refused to commit to a specific course of remediation notwithstanding its admission that MEC from the Range could still explode. Consequently, Lennar promptly responded to protect its homebuyers and the public at large by remediating MEC at its own expense.

5. Despite its remediation activities, Lennar has been sued by homeowners in its communities who allege diminution in the value of their properties. Consequently, Lennar is being forced to incur significant attorneys' fees to defend these actions and faces the potential for adverse outcomes in those proceedings.

6. The U.S. Army and USACE's breach of their duties relative to the Range has caused Lennar significant damages, entitling Plaintiffs to the relief requested below.

## JURISDICTION AND VENUE

7. This court has subject matter jurisdiction over this action pursuant to:

(a) 28 U.S.C. §§ 1331, which confers original jurisdiction over all civil suits arising under the Constitution and the laws of the United States, and 28 U.S.C. § 1346(b), which confers original jurisdiction over all civil suits against the United States arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

(b) Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

8. Plaintiffs have exhausted all administrative remedies as required by the FTCA, as follows:

(a) On July 22, 2009, Lennar timely filed its administrative claim under the FTCA with the USACE (a copy of which is attached as Exhibit A and which will be referred to as "Admin. Clm.").

(b) On May 26, 2010, the U.S. Army denied the administrative claim (a copy of which is attached as Exhibit B).

## PARTIES

### A. Plaintiffs

9. Plaintiff, Lennar Homes, is a Florida limited liability company, with its principal place of business in Miami-Dade County, Florida.

10. Plaintiff, U.S. Home, is a Delaware corporation, with its principal place of business in Miami-Dade County, Florida, which is authorized to conduct, and conducts, business in Florida.

11. Both Lennar Homes and U.S. Home are affiliates of Lennar Corporation, one of the nation's leading builders of quality homes. Lennar constructs homes in communities throughout Florida.

B. **Defendant and the Relevant Agencies**

12. U.S. Army is an agency within the United States Department of Defense, an executive branch agency of the Defendant, United States of America, and is the executive agent for the Defense Environmental Restoration Program ("DERP"), which, among other things, provides for cleanup of Formerly Used Defense Sites ("FUDS") that are suspected or known to contain unexploded ordnance.

13. The USACE is the organization within the U.S. Army that, among other things, manages and executes the DERP.

## FACTS

A. **The United States disposed of MEC on the Range.**

14. In 1943, George Terry, Sr., of the Terry Cattle Company, leased the Range, which consisted of approximately 12,453 acres of property, to the United States War Department ("USWD").

15. The USWD allowed the U.S. Army to use a portion of the property as a gunnery and demonstration range for testing and troop instruction in methods of tactical bombing, strafing, and gunfire attacks. These activities included small arms firing, air tactics evaluations, training demonstrations of strafing, practice bombing, air-to-ground rocket firing, and high explosive bombing.

16. In 1947, following the cessation of bombing at the Range, the U.S. Army and/or USACE conducted remediation activities. In March 1947, the USWD issued a dedudding report, which stated that the Range "and the impact area were well dedudded, and no further dedudding is necessary." The report also stated that "all" of the target and impact

area has been cleared and that the U.S. Army issued a "certificate of clearance." (Admin. Clm. at p. 2).

17. Sometime in 1947, two boys were severely injured when MEC located on or around the Range exploded.

18. In May 1947, the USWD issued a directive questioning the quality of the original dedudding efforts because "considerable dangerous material has been found on the ranges located in Florida." (Admin. Clm. at Exh. A).

19. This directive prompted additional dedudding efforts that culminated in the USACE issuing a Certificate of Dedudding in September 1947, which provided as follows:

> All lands within Pinecastle Combined Demonstration Range not cross-hatched in red, on attached map have been given a careful visual inspection and have been cleared of all dangerous and/or explosive materials reasonably possible to detect. To the best of my knowledge and belief, this range will not require additional dedudding to render safe for public use.

(Admin. Clm. at Exh. B).

20. In October 1953, the USACE issued the last known Certificate of Clearance for the Range, which stated as follows:

> All lands contained in and immediately surrounding the original 765 acre Restricted Area of the Pine Castle Gunnery Range located 7 miles east of Pine Castle, Florida, have been given careful visual inspection and new boundaries outlining contaminated areas have been established (see attached sketch and map).
>
> Lands contained in the old Restricted Area which are outside the new boundaries were found to be clear of all dangerous and/or explosive materials reasonably possible to detect, and are recommended to any use for which the lands are suited.

> Lands contained within the new Restricted Area boundaries were found to be contaminated by concentrated use of high explosive missiles and cannot be given unrestricted use. These lands are recommended to above-surface only.

(Admin. Clm. at Exh. C).

**B.     The Corps' review of the Range under the DERP.**

21.   In 1991, as part of the DERP, the Corps began to review FUDS to determine whether these sites warranted further action, including the clean up of MEC.

22.   In 1994, the USACE conducted preliminary investigations at the Range as part of an Inventory Project Report prepared pursuant to the DERP.

23.   In September 1997, the USACE issued an Archives Search Report ("ASR") which recommended further action by the government to clean up the Range. However, no remediation activities were undertaken.

24.   Despite the Range being part of the FUDS program, the U.S. Army and the Corps failed to properly include the Range on its FUDS database of sites requiring further remediation, even though they were required to do so, thereby failing to warn potential purchasers, including Lennar, of the attendant risks.

**C.     Lennar purchased lots and built homes without knowledge of the Range or remaining MEC.**

25.   From 2001 through 2005, Lennar purchased and developed lots in multiple residential communities, including (a) Tivioli Woods Community purchased in January 2001, from FOT, L.C.; (b) the Lee Vista Square subdivision purchased in July 2003, from Westover Development, Inc.; and (c) the Warwick subdivision purchased in August 2005, from Terrabrook Vista Lakes, L.P. and Newland Communities.

26. Prior to the purchase of these properties, Lennar obtained Phase I Environmental Assessments, which did not mention the Range or any potential MEC on the properties.

27. Having no knowledge of the Range or the remaining MEC, Lennar constructed and sold hundreds of single family residences in these three communities.

28. Subsequently, in July of 2007, unexploded ordnance was discovered at Odyssey Middle School, which is located on or in close proximity to the former Range.

29. The discovery of unexploded ordnance prompted the USACE to begin an investigation and compelled it to begin providing information to the public about the potential dangers resulting from the government's failure to properly dedud the Range.

**D.     The Corps advises the public of MEC on the Range.**

30. In July of 2007, the USACE for the first time issued a press release which disclosed that the Corps (a) had taken soil samples at 16 sites in the Range and found traces of nitroglycerin—a chemical used in explosives—in multiple samples, (b) had identified areas of the Range that were most heavily used for "target practice," (c) was in the process of obtaining approval to remove and clear a small portion of the Range, (d) had recently received reports of "unexploded ordnance" at the Range, (e) had, in conjunction with local law enforcement, removed unexploded ordnance from the Range, and (f) believed that some unexploded ordnance might still be present and could, "even after 60 years," explode if touched, "causing serious injury." (Admin. Clm. at Exh. E).

31. On July 24, 2007, the USACE held its first public meeting regarding the Range and the potential risks associated with the remaining MEC. (Admin. Clm. at Exh. F).

32. The Jacksonville District of the USACE subsequently held several public meetings to address concerns about the Range, releasing current and historical information and publishing it on its website.

33. Despite its knowledge of the MEC and attendant dangers, to date, the USACE has still not completely remediated the area. In fact, it did not complete its Final Remedial Investigation and Feasibility Study until April 2010.

34. The U.S. Army and USACE's negligent acts and omissions in addressing the MEC on and around the Range violated statutes, regulations, or policies that expressly govern their conduct. Moreover, to the extent that their acts or omissions involved judgment or choice, none involved considerations of public policy which would shield them from liability for their negligence.

E. **MMG is retained by Lennar and conducts a cleanup in Warwick.**

35. After the USACE released information about the Range to the public in late July 2007, Lennar evaluated it and concluded that MEC could present a potential danger to its homebuyers.

36. Concerned about its homebuyers, Lennar determined that immediate action should be taken to ensure their safety. The USACE, however, failed to agree to do so.

37. Consequently, Lennar retained Munitions Management Group ("MMG") in August 2007, to investigate, locate, and remove anomalies and MEC in its residential communities.

38. In or about April 2008, MMG completed its removal activities.

39. The work performed by MMG on behalf of Lennar resulted in, among other things, the following:

   (a) the investigation of 2,341 metallic anomalies;

   (b) the recovery of 22 empty small arms (.50 caliber) cartridge cases; and

   (c) the management of 2 munitions debris items: inert filled AN-M40A1, 23 lb Parachute Fragmentation Bombs as unexploded ordnance.

40. All of MMG's work was performed consistently with the National Oil and Hazardous Substance Response National Contingency Plan, 40 C.F.R. part 300.

41. To date, Lennar has incurred significant costs of at least $947,723, resulting from MMG's clean up activities.

**F.   Homeowners commence litigation against Lennar.**

42. Despite Lennar's decision to undertake remediation, homeowners commenced litigation against Lennar alleging that it failed to disclose the existence of the Range and the potential for MEC to prospective homebuyers (collectively referred to as the "Homeowners' Lawsuits").

43. Each of the Homeowners' Lawsuits seeks recovery of, among other things, unspecified damages for alleged diminution in value of the subject properties purportedly resulting from the existence of MEC or attendant environmental contamination.

44. Lennar has denied and continues to deny the allegations in the Homeowners' Lawsuits. Nevertheless, Lennar has incurred and will continue to incur significant attorneys' fees and costs to defend these actions and faces the potential for adverse outcomes.

## COUNT I
## NEGLIGENCE

45. Lennar realleges paragraphs 1 through 44, above.

46. All conditions precedent to the institution and maintenance of this action and the granting of the relief requested have been performed, have occurred, or have been waived.

47. The United States owed duties to Lennar and others to, among other things, exercise reasonable care to properly (a) search for MEC; (b) locate MEC; (c) remove, disarm, and/or discard MEC; (d) remediate any environmental contamination; (e) appropriately record and post the location of the Range and associated MEC, and (f) warn Plaintiffs and others of the attendant risks.

48. The failure to properly dedud the Range and surrounding areas presents a threat to public safety that the U.S. Army and the USACE failed to timely disclose or properly correct.

49. The United States breached its duties owed to Lennar and others by, among other things, (a) violating legal obligations imposed by applicable law to properly dedud the Range and surrounding areas, (b) violating internal guidelines, policies, or other mandatory directives, by failing to properly dedud the Range and surrounding areas, (c) failing to properly remediate after it learned that the Range had not been properly deduded or remediated, and (d) failing to properly record and post the location of the Range and associated MEC in accordance with applicable law.

Greenberg Traurig, P.A.

TPA 511,497,859

50. As a direct and proximate result of these acts or omissions, Lennar has sustained damages of at least $947,723.

WHEREFORE, Plaintiffs respectfully request that the Court determine that the United States is liable to Lennar under the FTCA, and award the Plaintiffs the following relief:

(a) damages of at least $947,723.12 for past remediation costs;

(b) future remediation costs in an amount to be determined by the Court;

(c) damages for amounts incurred by Plaintiffs as result of the Homeowners Lawsuits, including attorneys' fees and costs incurred in the defense of these actions;

(d) their costs incurred in this action; and

(e) such additional relief as is necessary to protect Plaintiffs' rights and interests.

## COUNT II
## NEGLIGENT FAILURE TO WARN

51. Plaintiffs reallege paragraphs 1 through 44, above.

52. The United States owed a duty to Plaintiffs and others to, among other things, (a) warn of the existence and the U.S. Army's prior use of the Range, (b) warn of the known risks caused by the U.S. Army's former use of the Range, including potential personal injury and property damage resulting from the presence of MEC and attendant environmental contamination, and (c) warn that all of the MEC had not been, or may not have been, properly removed from the Range and surrounding areas.

Greenberg Traurig, P.A.

TPA 511,497,859

53. The United States breached its duty to Lennar by failing to disclose, warn, and educate of the dangers posed by the Range.

54. The United States knew of the risks that the Range posed to Lennar and others and had an obligation to disseminate that information to avoid injury to persons and property.

55. As a direct and proximate result of these acts or omissions, Lennar has sustained damages of at least $947,723.

WHEREFORE, Plaintiffs respectfully request that the Court determine that the United States is liable to Lennar under the FTCA, and award the Plaintiffs the following relief:

   (a)   damages of at least $947,723.12 for past remediation costs;

   (b)   future remediation costs in an amount to be determined by the Court;

   (c)   damages for amounts incurred by Plaintiffs as result of the Homeowners Lawsuits, including attorneys' fees and costs incurred in the defense of these actions;

   (d)   their costs incurred in this action; and

   (e)   such additional relief as is necessary to protect Plaintiffs' rights and interests.

**(Attorney's Signature Appears on the Following Page)**

Dated: November 26, 2010                    Respectfully submitted,

/s/ David B. Weinstein

David B. Weinstein
Fla. Bar No. 604410
weinsteind@gtlaw.com
Kimberly S. Mello
Fla. Bar No. 2968
mellok@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 E. Twiggs St., Ste. 100
Tampa, FL  33602
Telephone: (813) 318-5700
Facsimile:  (813) 318-5900

*Counsel for Plaintiffs, Lennar Homes, LLC and U.S. Home Corporation*